IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIE HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 06 C 6451 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| CAROL ADAMS, THOMAS MONAHAN, ) | |
| DARRELL SANDERS, SHAN JUMPER, LEA ) | |
| CHANKIN, JANET SANDS, CAREY ) | |
| LAVAUX, SHANE REISTER, MARK ) | |
| BRENZINGER, SCOTT MAIERITSCH, ) | |
| JEFFERY CLAUSEN, and JOSEPH ) | |
| PROCTOR, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Willie Henderson, a civil detainee in the custody of the Illinois Department of Human Services ("DHS"), brings this *pro se* civil rights action pursuant to 42. U.S.C. § 1983. Henderson claims DHS officials and its contractors conspired to commit numerous acts of "invidious discrimination" in denial of Henderson's constitutional rights. He seeks compensatory and punitive damages from each individual defendant.

The "Liberty defendants" [Liberty Healthcare Corp. and those employed by them] and the "DHS defendants" [those employed by DHS] move to dismiss the amended complaint for failure to state a claim.[1] For the reasons set forth below, defendants' joint motion to dismiss is granted.

## I. STANDARD OF REVIEW ON A MOTION TO DISMISS

---

[1] The court previously dismissed Henderson's original complaint against defendants without prejudice due to pleading deficiencies. *Henderson v. Adams*, No. 06 C 6451, 2007 WL 1958574 (N.D. Ill. June 29, 2007) ("*Henderson I*").

*Pro se* complaints must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir.2000). Complaints may be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Fact pleading is not necessary to state a claim for relief. *Thompson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim to give a defendant fair notice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1964, --- L.Ed.2d ---- (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957)). A plaintiff's obligation to state the grounds of his claim requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 127 S.Ct. at 1964-65 (citations omitted).

The court accepts the allegations in the complaint as true, viewing all facts and reasonable inferences in the light most favorable to the plaintiff. *Bell Atlantic Corp.*, 127 S.Ct. at 1975 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1, (2002)).

## II. BACKGROUND FACTS

Henderson is a civil detainee, committed as a "sexually violent person" pursuant to 725 ILCS § 207/5. A sexually violent person is someone convicted of a sexually violent offense (or found not guilty of a sexually violent offense by reason of insanity) "who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." *Id.*, § 207/5(f). The civil commitment lasts until the individual "is no longer sexually violent." 725 ILCS 207/40(a).

Defendants are: (1) Thomas Monahan, an employee of the Illinois Department of Human Services ("DHS"), and Director of the Joliet Treatment and Detention Facility ("TDF"); (2) Carol Adams, the Secretary of the DHS and of the Joliet TDF; (3) Shan Jumper, TDF Clinical Director; (4) Lea Chankin, TDF Associate Clinical Director; (5) Janet Sands, a therapist; (6) Carey Lavaux, another therapist; (7) Shane Reister, a staff member at one of the detention facilities; (8) Mark Brenzinger, a former employee of Liberty Healthcare Corporation; (9) Darrell Sanders, the Director of Security at the TDF; (10) Scott Maieritsch, a team leader for Joliet TDF's clinical staff; (11) Jeffrey Clausen, a facilitator/therapist at Joliet TDF; (12) Joseph Proctor, the team leader and supervisor at the TDF; and (13) Liberty Healthcare Corporation, the employer of defendants Jumper, Sands, Lavaux, Reister, Brenzinger, Maieritsch, Clausen and Proctor. The facts are drawn from the amended complaint and attached documents. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (court will consider exhibits attached to complaint on motion to dismiss).

On December 18, 2000, Henderson was transported to the Joliet TDF, an institution that houses sexually violent offenders. Henderson was held there until August 7, 2006, when he was transferred along with all other detainees to the new facility in Rushville, Illinois. Liberty is a private company that operates sex offender treatment programs.

In a series of events beginning on October 18, 2005, Henderson claims the Liberty defendants undertook a series of acts to remove him from the sex offender treatment program, ultimately preventing him from consideration for release as a non-sexually violent person. Henderson was initially suspended from a treatment group after he was falsely accused of threatening therapist Lavaux. Following his removal from the group led by Lavaux, Henderson filed grievances with

3

DHS and Liberty claiming that the allegations against him were false. Henderson contends these grievances were ignored.

Henderson alleges other Liberty personnel began falsifying his progress notes, verbally attacking him in group sessions, manipulating other residents to turn against him, and suspending him from further group sessions. Specifically, Henderson alleges that therapist Brenzinger falsified Henderson's progress notes, eventually leading to an end to his treatment. He contends therapist Sands intentionally prevented him from progressing in therapy by removing him from her treatment group and verbally abusing him. *Id.* at 8, 10. After filing grievances against Sand, Henderson states his complaints fell on deaf ears, and that he was unable to present his case at a hearing. *Id.* at 10. He claims his grievances were ignored by DHS and Liberty officials for retaliatory purposes, and that Sands continued to mistreat him after his grievances.

Henderson also claims Liberty personnel retaliated against him by placing him in a cell with a homosexual, after Henderson advised them that he was sexually harassed by the individual and it was against his religion to cell with homosexuals. When Henderson protested, defendants refused to change his cell.

Although Henderson details these incidents in twelve separate claims, the gravamen of his complaint is that he was mistreated by Liberty personnel and was not afforded proper review of his grievances due to "invidious discrimination" and retaliation. He further alleges his grievances have only led to retaliatory acts. He asserts defendants are intentionally denying him treatment and are falsifying his records so that he will never be released. Attached to the amended complaint are numerous grievance forms alleging specific acts by various defendants, as well as declarations made by other individuals on Henderson's behalf.

4

## III. ANALYSIS

Liberally construing Henderson's complaint, he raises four possible violations of his constitutional rights: defendants (1) made false accusations against Henderson and verbally assaulted him to exclude him from treatment; (2) discriminatorily mistreated him in violation of the Fourteenth Amendment; (3) retaliated against him for filing grievances; and (4) failed to investigate and were deliberately indifferent to Henderson's grievances.

### A. 42 U.S.C. § 1983

Section 1983 provides a cause of action for plaintiffs "'depriv[ed] of any rights, privileges, or immunities secured by the Constitution,' by persons acing under color of state law." *Eades v. Thompson*, 823 F.2d 1055, 1060 (7th Cir. 1987) (quoting 42 U.S.C. § 1983). To state a claim, Henderson must allege: (1) he was deprived of a right secured by the constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). As a civilly committed detainee, Henderson is protected by the Fourteenth Amendment's due process clause. *Id.* at 910. His protections are similar to those against cruel and unusual punishment extended to prisoners by the Eighth Amendment. *Id.* (holding there is "little practical difference" between the Eighth and Fourteenth Amendment for § 1983 claims).

### B. Henderson's Claims

#### 1) *False Accusations, Verbal Abuse, and Exclusion from Group Therapy*

Henderson claims various Liberty therapists and officials mistreated him by creating false allegations against him, falsifying his progress notes, and verbally abusing him (Claims 1-3, 6). He claims therapist Lavaux falsely accused him of threatening to sexually assault her to have him

5

suspended from treatment. He claims Lavaux and therapist Brenzinger falsified progress notes for the same reason. He alleges therapist Sands verbally assaulted him by yelling out of control, thereby forcing Henderson to be removed from her treatment group. The Liberty and DHS defendants argue Henderson does not sufficiently state a claim for a constitutional violation under § 1983, and alternatively, his claims of unprofessional treatment do not obviate the professional judgment standard set forth in *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982).

Detainees are entitled to be free from arbitrary acts by prison officials, including falsification of documents. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984); *Galimore v. Lane*, 635 F. Supp. 1367, 1369 (N.D. Ill. 1986) (Roszkowski, J.). However, arbitrary acts by officials do not rise to constitutional violations if the detainee's procedural due process rights are protected. *Marshall v. Fairman*, 951 F. Supp. 128, 133 (N.D. Ill. 1997) (Gettleman, J.). In other words, Henderson has no constitutional claim if TDF officials provided him adequate procedures to address his falsification allegations. *See Hanrahan*, 747 F.2d at 1140 (citing *Wolf v. McDonnell*, 418 U.S. 539, 558 (1974) (prison officials must provide written notice of violations, written fact-finding statements, and the right to present witnesses and evidence to an impartial decision-maker before prisoner could be sanctioned); *see also Lagerstrom v. Kingston*, 463 F.3d 621, 625-26 (7th Cir. 2006).

Henderson was provided adequate procedural due process regarding his grievances. The numerous grievance and ethical allegations set forth in the amended complaint demonstrate he was freely allowed to raise complaints to facility officers. Henderson does not allege these procedures failed to comport with due process; he only argues with the results.[2] Henderson's falsification

---

[2] In Claim 6, Henderson alleges that he was denied the opportunity to defend himself when he attended a behavioral hearing overseen by Proctor. He alleges he was prevented by Sands and Proctor from presenting evidence in support of his defense. This claim was not made in the context

allegations do not state a constitutional violation and must be dismissed. *See Galimore*, 635 F. Supp. at 1369 (prison officials' motion to dismiss granted where plaintiff's procedural due process rights protected regarding allegations of falsified disciplinary report).

The verbal abuse claim is equally deficient. Henderson identifies instances when Sands yelled at him in an allegedly abusive manner. He does not allege Sands physically struck him, threatened him, or used racially derogatory language. Henderson's allegations simply do not implicate protected constitutional rights. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (even "racially derogatory language, while unprofessional and deplorable, does not violate the Constitution"); *Walker v. Akers*, No. 98 C 3199, 1999 WL 787602, at *5 (N.D. Ill. Sept. 24, 1999) (Anderson, J.) (allegations of isolated incidents of verbal harassment without physical contact do not state an Eighth Amendment claim); *Santiago v. Childers*, No. 05-512-MJR, 2006 WL 2947427, at *8 (S.D. Ill. Sept. 29, 2006) (isolated, infrequent incidents of verbal abuse do not give rise to an Eighth Amendment claim). Henderson has not alleged a constitutional violation with respect to verbal abuse.

Allegations of unprofessional treatment by various defendants leading to his exclusion from group therapy sessions are insufficient. The Fourteenth Amendment protects civil detainees from punishment and entitles them to "minimally adequate opportunities for treatment and medical care." *Riley v. Doyle*, No. 06-C-574-C, 2006 WL 2947453, at *5 (W.D. Wis. Oct. 16, 2006) (citing *Youngberg*, 457 U.S. at 320). However, detainees are not entitled to be free from all restrictions. *Bell v. Wolfish*, 441 U.S. 530, 537 (1979). There is a recognized distinction between "punitive measures that may not be constitutionally imposed . . . and regulatory restraints that may." *Id.*; *see*

---

of denial of an opportunity to raise his *own* grievance claim.

*also Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). A detainee cannot state a claim unless he can identify a "right to be free from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of his confinement." *Thielman v. Leean*, 282 F.3d 478, 484 (7th Cir. 2002). In other words, Henderson cannot "nickel and dime his way into a federal claim by citing small, incremental deprivations" of freedom. *Id.*

The amended complaint's substantive allegations indicate Henderson was excluded from specific group therapy treatment sessions. He alleges this was done to remove him from treatment altogether. But the attached "notice of suspension" indicates that he was not permanently barred from the group but was suspended and referred to a "tactics" group. Am. Compl. at Ex. B. Therefore, Henderson's own exhibits reflect he was not excluded completely from treatment. Nor are there allegations that the tactics group is inadequate; Henderson simply prefers his original group. At best, Henderson alleges a denial of his preferences. That is not enough to state a constitutional claim. *See Allison*, 332 F.3d at 1081 (mere fact that detainee would prefer another course of treatment does not suggest current treatment is constitutionally inadequate); *McClarin v. Walker*, No. 07-1003, 2007 WL 1188360, at *3 (C.D. Ill. Apr. 20, 2007) (loss of privileges are not considered "atypical and significant hardships" or constitutional violations); *Laxton v. Watters*, 348 F. Supp. 2d 1024, 1030 (W.D. Wis. 2004) ("[c]ivil detainees are entitled to some kind of treatment, although it need not be to the detainee's liking"). These deficiencies in Henderson's claims compel dismissal.

### 2) *Equal Protection Claim*

Henderson asserts that his mistreatment in the aggregate was committed out of invidious discrimination. "To establish a prima facie case of discrimination under the equal protection clause, [Henderson is] required to show that he is a member of a protected class, that he is otherwise

similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown*, 398 F.3d at 916 (citations omitted).

This claim is subject to dismissal because, as previously addressed in *Henderson I*, Henderson does not allege the nature of the discrimination. 2007 WL 1958574, at *3. Rather, he merely alleges that defendants acted in a way "just to get him" out of malice. Although this allegation may be sufficient under the equal protection pleading standard set forth in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), Henderson still fails to plead how his treatment was any different from others similarly situated. In this regard, Henderson does not plead disparate treatment, and does not allege that the decision-makers singled out a particular group for disparate treatment and "selected his course of action for the purpose of causing its adverse effects on the identifiable group." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (Nordberg, J.) (citation omitted). Consequently, his equal protection claim fails.

### 3) *Retaliation Claims*

The amended complaint alleges Henderson was retaliated against for filing grievances. (Claims 4, 5, 7). Henderson appears to allege he was excluded from group therapy in retaliation for filing grievances against his therapist Sands. Henderson also alleges he was forced to room with a homosexual as retaliation for unspecified acts. The Liberty and DHS defendants argue the allegations fail to state a claim because the harms do not rise to constitutional violations and there is no injury.

A cause of action exists under § 1983 when officials retaliate against detainees for exercising their constitutional rights. *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005); *Morris v. Velasco*, No. 03 C 2613, 2003 WL 21397742, at *4 (N.D. Ill. June 16, 2003) (Moran, J.). A detainee's right to

file grievances against staff is protected by the First Amendment. *Id.* To state a retaliation claim, Henderson must plead three elements: he must (1) "specif[y] a retaliatory action;" (2) name the appropriate defendants; and (3) "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Conduct that is not an independent constitutional violation can be the basis of a retaliation claim if it is done with "an improper, retaliatory motive." *Id.*; *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

Henderson alleges TDF officials, specifically Proctor and Chankin, retaliated against him for filing a grievance against Sands. The retaliatory actions were exclusion from a group therapy session and transfer to a different group therapy session. He also alleges that Liberty therapists Clausen and Reister retaliated against him by requiring him to room with a homosexual and not responding to his complaint that he was sexually harassed by his roommate. These actions do not rise to independent constitutional violations. *Allison*, 332 F.3d at 1081 (detainee's preference for alternate treatment is constitutionally inadequate to state a claim); *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir. 1988) (no constitutionally protected liberty interest in remaining in any particular wing of a prison). But they are sufficient to provide notice of a retaliation claim. *Hoskins*, 395 F.3d at 375.

However, the allegations are fatally defective. Section § 1983 is a tort statute. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Tort claims require injuries to be actionable; *de minimus* injuries do not state federal claims. *Id.*; *Morris*, 2003 WL 21397742, at *4 ("not every act of retaliation amounts to a federal claim"). In the First Amendment context, if the alleged retaliatory conduct is unlikely to deter free speech, it is considered *de minimus*. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982); *Morris*, 2003 WL 21397742, at *4 (the test is whether a person of "ordinary firmness" would be deterred). The amended complaint's allegations make clear that Henderson

10

suffered no actionable injury. Indeed, the amended complaint and exhibits attached demonstrate that defendants did not deny Henderson on-going treatment. Rather, he was suspended from his treatment group, but was allowed to attend his treatment group's sessions. *See* Am. Compl. Exs. B-1, B-5. As a result, any retaliation was *de minimus* and did not amount to an actionable First Amendment violation. *See Morris*, 2003 WL 21397742, at *4 (§ 1983 claim dismissed where prisoner alleged his guard detail was substituted in retaliation for complaint regarding medical care); *Buck v. Briley*, No. 2001 C 1153, 2001 WL 619523, at *5 (N.D. Ill. May 23, 2001) (Leinenweber, J.) ("[s]uch one-time annoyances as turning off the water to [prisoner's] cell for six hours, even if done in retaliation for [prisoner's] perceived litigiousness, do not rise to the level of a constitutional claim"). Moreover, Henderson does not contend his First Amendment rights were deterred. He continued to file numerous grievances and ethics complaints after the alleged retaliatory acts.

Similarly, his retaliation claim based on cell assignment with a homosexual roommate is wanting on several grounds. Henderson claims he was retaliated against by Reister and Clausen by being forced to room with a homosexual. However, he does not allege Reister or Clausen were even aware of his complaints; nor does he plead any basis upon which Reister or Clausen would retaliate against him. Rather, he merely alleges that he was required to room with a homosexual as a result of retaliation and/or discrimination. This recitation does not provide any basis for retaliation or discrimination claims.

Additionally, the allegations regarding retaliation claims against Clausen and Reister do not state an actionable injury. Henderson alleges that he protested the room assignment because of a previous sexual harassment incident. However, he does not allege physical contact, threats, or other menacing behavior by the roommate. He alleges his roommate masturbated openly in his room, but

11

does not allege that sharing the cell prevented him from exercising his First Amendment rights to assert grievances. Henderson's claim against defendants for failing to grant his room change request does not amount to an actionable injury for retaliation.

### *4) Henderson's Remaining Claims: Failure to Investigate*

Henderson's remaining claims against Liberty defendants Chankin (the Associate Clinical Director), Jumper (the Clinical Director), Sanders (TDF director of security), Proctor (therapist at TDF), and the DHS defendants (claims 6 - 12) are also dismissed because Henderson has not alleged a constitutional deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (collecting case; internal quotation marks omitted) ("[u]nder any theory, to be liable under § 1983 , the individual defendant must have caused or participated in a constitutional deprivation"). Henderson alleges that Liberty and DHS officials were deliberately indifferent to his grievances, and failed to investigate the falsification and abuse claims he raised against Liberty therapists. This is insufficient to state a claim for deliberate indifference.

Defendants violate the Eighth Amendment's proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). A prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotations omitted). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Foelker v. Outagamie County*, 394 F.3d 510,

512-13 (7th Cir. 2005). Henderson has not pleaded that he has a serious medical condition posing a substantial risk of harm.

Non-medical staff were entitled to rely on the decisions of professional treatment staff and acted reasonably in deferring to the opinions of the therapeutic experts in suspending Henderson from his core treatment group. *Greeno*, 414 F.3d at 655-56; *Sain v. Budz*, No. 05 C 6394, 2006 WL 2796467, at *7 (N.D. Ill. Sept. 28, 2006) (Conlon, J.). Henderson's claim that upper level DHS officials and Sanders failed to exercise professional judgment in changing his treatment program is insufficient.

A prison official is only liable under § 1983 for failing to respond to violations of constitutional rights that come to his or her attention in the grievance process. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir.1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995). Because Henderson fails to allege a constitutional violation for his perceived grievances, his claims against Liberty and DHS officials fail.

## CONCLUSION

Due to Henderson's failure to plead constitutional violations for his § 1983 claim, defendants' joint motion to dismiss is granted. The amended complaint is dismissed without prejudice.

ENTER:

Suzanne B. Conlon
United States District Judge

November 30, 2007

13